Slip Op. 14 - 36

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| FDK AMERICA, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: R. Kenton Musgrave, Senior Judge |
| | : | Court No. 11-00385 |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____ :

### MEMORANDUM & ORDER

[Granting motion to amend scheduling order; holding in abeyance motion for discovery and protective order.]

Dated: April 4, 2014

*Michael K. Tomenga*, Neville Peterson LLP, of Washington, DC, for the plaintiff.

*Alexander J. Vanderweide*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the defendant. With him on the brief were *Stuart F. Delery*, Assistant Attorney General and *Amy M. Rubin*, Acting Assistant Director, International Trade Field Office.

Musgrave, Senior Judge:  This opinion addresses a *sui generis* discovery motion in

litigation of the customs duty classification of certain optical isolators from Sri Lanka.  The motion

pertains to the plaintiff's attempt to obtain from the defendant U.S. Customs and Border Protection

("Customs") the non-privileged but business-confidential documentation that underlies Headquarters

Ruling ("HQ") 965942 (dated Dec. 19, 2002), published *sub nom. General Notice on Revocation of*

*Ruling Letter and Treatment Relating to Tariff Classification of Certain Optical Amplifiers and*

*Dispersion Compensation Modules Used in Long-Haul Digital Telecommunications Systems*, 37

Cust. B. & Dec. 2 (Jan. 8, 2003) at 5-9.  HQ 965942 pertains to reconsideration of a customs

classification ruling requested by Nortel Networks, Inc. from the U.S. Customs Service, *i.e.*,

Customs' nominal predecessor.  The owner of the property underlying the documents being sought

is not a party to this litigation.  Absent the owner's consent, the government's disclosure is precluded

by the Privacy Act, 5 U.S.C. §552a, unless, *inter alia*, mandated by "order of a court of competent

jurisdiction"[1].  That is the objective of this motion, as the parties represent that attempts to identify

the property's ownership and obtain permission for disclosure have gone unanswered.

It is a matter of public record that Nortel has been engaged in jointly-administered

bankruptcy proceedings in the United States, *see In re Nortel Networks Inc.*, U.S. Bankruptcy Court,

District of Delaware, No. 09-10138, and in Canada, *see In the matter of Nortel Networks Corp.*,

Ontario Superior Court of Justice, No. 09-CL-7950.  Following a teleconference with the parties, the

court agreed to *in camera* inspection of the documents the plaintiff seeks.  Although the inspection

shed light on the relevancy of the documents at issue, it did not resolve the problem of obtaining, or

at least attempting for the record to obtain, the proper owner's consent to disclosure.  The court

therefore concluded that discovery is still dependant upon the process of attempting to provide

proper notice to ownership of the documents concerning the request for their disclosure.

The court's rules, including those for discovery and subpoenas, apply to all civil

actions brought before it, *see* 28 U.S.C. §2641, and the court and its officers have the authority to

---

[1]  Subsection (b) of the Privacy Act provides: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be-- . . . (11) pursuant to the order of a court of competent jurisdiction".  5 U.S.C. 552a(b).

issue a national *subpoena duces tecum* for production of documents.  *See* USCIT R. 45.  By order

of January 14, 2014, the court directed the plaintiff to that rule and USCIT Rule 34(c) governing

discovery from non-parties to litigation.  The instant motion, however, is submitted pursuant to

USCIT Rules 26(b)(1) and 26(c)(1)(G).  Rule 26(b)(1) provides for a broad scope of discovery of

any nonprivileged relevant matter and for court-ordered discovery "for good cause".  Rule

26(c)(1)(G) provides, also for "good cause", that the court may "issue an order to protect a party or

person from annoyance, embarrassment, oppression, or undue burden or expense, including . . .

requiring that a trade secret or other confidential research, development, or commercial information

not be revealed or be revealed only in a specified way".  The instant motion thus seeks court orders

directing the defendant to produce, subject to a proposed confidentiality agreement,[2] the requested

documents in the defendant's possession.  Mot. at 5.  The plaintiff's good-cause argument is

predicated on the following:

> Nortel is absent from this proceeding to identify any concerns about the sensitive
> nature of Nortel's confidential business documents[,] . . . FDK notes that any
> technology described in the confidential Nortel documents withheld would predate
> January 2003, the date of the ruling to which the withheld Nortel documents relate
> was issued. Due to the age of the documents, they likely are of little or no

---

[2]  In addition, the plaintiff seeks amendment of the scheduling order to provide an additional 90 days after the date of this memorandum and order to permit deposition of any additional witnesses having discoverable information on "this issue".  Mot. at 5.  The plaintiff represents it previously granted additional time to the government to respond to its discovery requests to allow the government to seek an appropriate representative with authority over the contested documents to provide consent to their disclosure, and to facilitate that consent the plaintiff drafted the proposed confidentiality agreement that is attached to its instant motion.  *See* Mot. at 5 & Ex. 2.  The plaintiff contends the proposed confidentiality agreement would (1) limit its use of the confidential documents and information to this proceeding, (2) prevent further disclosure, (3) is modeled on such agreements that have been published by federal district courts, and (4) is necessary because the protective order issued by the court on July 3, 2012 covers only the plaintiff's confidential business information and does not address that of the government or third parties.

competitive interest to FDK. The pertinent industry, the telecommunications industry, is one in which technology changes rapidly so 2003 technology would be expected to be of little or no present use.  Given that Nortel is not operational and in bankruptcy and inasmuch as the product information to be disclosed is over ten years old in an industry with rapidly changing technology, the Court may infer from Nortel's condition and legal status and the age of the product information that disclosure of Nortel's confidential business information to FDK would not cause any specific damage to Nortel's competitive position.  Nevertheless, FDK, in its proposed Confidentiality Agreement, would agree to confine its use of the confidential Nortel documents to this action and no competitive purpose.

*Id.*  Attached thereto is certification of counsel for the plaintiff as to efforts the parties have expended in attempting to obtain consent, which, as above indicated, also avers that "Nortel has been unresponsive" to such requests. Certification attached to Pl's Mot. for Discovery at 2.

The government opposes the motion on the ground of relevance, to wit, that a

different legal analysis framed Customs' review of FDK's merchandise than concerned Customs' review of Nortel's merchandise.  Even if FDK were to argue that the two rulings are inconsistent, the Nortel ruling has no bearing on the instant action, which involves different merchandise and a different importer.  Because this Court reviews FDK's claims *de novo*, neither HQ H132656 [*i.e.*, the plaintiff's challenged ruling] nor HQ 965942 necessarily guides, let alone circumscribes, the Court's analysis here.  Moreover, we do not anticipate that we will seek any type of deference to the Nortel ruling in defense of this action. As such, the Nortel ruling in no way binds the Government's position in this case.

Def's Resp. at 2.

*Analysis*

The government's arguments do not dispel the relevancy of the documents sought with respect to whatever theory the plaintiff may decide to advance on the underlying action. Relevancy in discovery is to be construed broadly, subject only to certain limitations not immediately apparent here.  *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

As above indicated, the Privacy Act generally prohibits disclosure of private personal information in the hands of government, *see also* 5 U.S.C. §552(b)(4) (protecting trade secrets and other privileged or confidential information), unless, *inter alia*, "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. §552a(b)(11). *See*, *e.g.*, *Gilbreath v. Guadalupe Hospital Foundation Inc.*, 5 F.3d 785, 791 (5th Cir. 1993). This does not confer a private right of action to compel production of third-party documents, *Haydon Bros. Contracting, Inc. v. SSA*, No. 7:11-96, 2012 WL 38608, at \*2 (E.D. Ky. Jan. 9, 2012), but it does provide for court-ordered disclosure for discovery purposes -- even without the consent of "the individual to whom the record pertains".

With, or rather without, respect to non-party individuals having no relationship to or interest in being dragooned into particular litigation, the authority to order disclosure pursuant to section (b)(11) thus reflects an unfortunate aspect of the system of discovery that is anathema to civility where "consent" is concerned.[3] But given the compulsory nature of certain process to secure a "presence" to litigation (*e.g.,* via *subpoena duces tecum*), that does not mean, at least for the time being, that one's right in controlling disclosure of one's information is to be overlooked. *See*, *e.g.*, *FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300 (D.C. Cir. 1980).

Thus, perhaps, it has been opined that motions for court-ordered disclosure of information without consent should be evaluated by balancing the need for disclosure versus the

---

[3] Which, for whatever reason, this "free" nation finds acceptable. *But cf*. U.S. Const. amend. V (Takings Clause). After all, the Takings Clause "provides that private property shall not 'be taken for public use, without just compensation.' " *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (quoting U.S. Const. amend. V). *But cf. itm.*, *e.g.*, *J.P. v. Desanti*, 653 F.2d 1080, 1090 (6th Cir. 1981) (holding that "the Constitution does not encompass a general right to nondisclosure of private information"). This court, at any rate, was somewhat surprised to discern "practice tip" commentary that advises as to the preferability of attempting to obtain non-party consent to Privacy Act disclosure in the first instance, as if that were not an obvious civil process.

potential harm to the subject of requested disclosures.  *See, e.g., Perry v. State Farm Fire & Casualty Co.*, 734 F.2d 1441, 1447 (11th Cir. 1984) (balancing need for disclosure against potential harm to the subject of the disclosure); *Laxalt v. McClatchy*, 809 F.2d 885, 890 (D.C. Cir. 1987) (use of balancing test appropriate); *Rubin v. Regents of University of California*, 114 F.R.D. 1, 4 (N.D. Cal. 1986) (balancing test).  Such a test, however, presumes an answer to the question of consent.

       Here, there is no such answer -- as yet.  To date, neither the plaintiff nor the defendant (nor this court, for that matter) have been able to obtain, in accordance with USCIT Rule 26(b)(1), the identity of the non-party with control or ownership of the documents the plaintiff seeks, in order to attempt to obtain consent for their disclosure, and the plaintiff avers that the attempts to date should suffice, that it has done what is reasonably necessary to obtain consent, that its proposed protective order provides adequate protection as to the non-party's interests, and that therefore the court should order disclosure.  But whether the plaintiff's proposed protections can be deemed adequate, neither the plaintiff nor Customs has standing to assert the documents' ownership rights and the impact of the instant motion thereon.  *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992); *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989); *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 76 F.R.D. 47, 58 (W.D. Pa. 1977).  Further, the proposed form of protective order does not provide for assent thereto by an individual with the authority to consent to the documents' disclosure (hereinafter "non-party"), and the motion itself does not provide for a process of adequate notice of the proposed action to the non-party or adequately reflect for the record that identification efforts have been exhausted.

       The court can appreciate that certain informal collegiality among the bar that is often helpful to speedier resolution than protracted litigation, but the record must reflect adequate due

process, and this court remains loath to order disclosure of the non-party's property in the absence of a more formalistic or "informed" attempt at obtaining consent. *See Fuentes v. Shevin*, 407 U.S. 67 (1972). In that vein, the order of January 14, 2014 contemplated that the subpoena process would provide the necessary formality towards that purpose, whether issued to Nortel itself or to counsel for Nortel, *Wilson v. United States*, 221 U.S. 361 (1911), or to whomever may have information as to the non-party's identity, since national jurisdiction here, as above indicated, obviates the geographic district-limitation of *subpoena duces tecum* service to a third party for the production of documents or information. *Cf.*, *e.g.*, *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397 (5th Cir. 1993).

Upon information and belief realized since the prior teleconference, however, it appears likely that the rights in the technology covered by HQ 965942 were transferred out of Nortel's bankruptcy sometime in early 2009. As to the implication of joint administration of that process, by Canadian and U.S. courts, or to whom those rights were transferred, the record before this court is unclear, and providing notice that "compels" the production of documents in this matter (assuming the absence of consent) may therefore implicate the extraterritoriality that is the subject of USCIT Rule 45(b)(3) and 28 U.S.C. §1783. That possibility, however, does not relieve the requirement of due process before official action affecting rights may be taken. *E.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

To aid that process, it is worth observing that the particular discovery proceeding at bar is essentially *in rem*, and therefore resembles litigation in the claimant context. *Cf. Mullane*, *v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). In such a context, the court will consider whether particular notice comports with due process on the basis of whether the "claimant"

individual is "known" or "unknown."  In the case of such an individual who is determined missing

or unknown, notice by publication or other indirect means of notification may suffice.[4]  *E.g. Cunnius*

*v. Reading School District*, 198 U.S. 458 (1905).  *See also Mullane*, 339 U.S. at 317.  By contrast,

a "known" individual is one whose identity is "reasonably ascertainable".  *Tulsa Prof'l Collection*

*Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988).  Here, the particular documents (and the property they

cover) are "known," in the hands of Customs, the plaintiff has expressed a valid interest in their

discovery insofar as they have relevancy to the claims it would here express, the court's authority

with respect to them is thereby invoked, and the non-party is presumed also to have an interest in

expressing to the court why discovery of the documents may or should not be allowed.  On the

record before the court, the plaintiff's presentment does not persuade that the identity of the non-

party should therefore fall into the "unknown" category, *i.e.*, that the non-party's identity is not

"reasonably ascertainable".

           Until such time as the non-party comes forward, or efforts to locate it have been

exhausted and other constructive notice attempted, the presumption must remain against disclosure

and in favor of the supremacy of individual privacy and property rights against unspecified but

---

[4] In such a circumstance, because the documents sought pertain to a prior published Customs ruling, publication by notice may therefore suffice, *e.g.*, by publication in the Customs Bulletin and in the Federal Register, of a summary of this *in rem* discovery motion and its status and of this memorandum, together with notice to the effect that after exhausting effort to identify the current owner of the property covered by HQ 965942, Customs is being ordered to disclose the documents covered by HQ 965942 that the plaintiff seeks, subject to execution of the plaintiff's proposed protective order, both of those processes to occur on, or as soon as practicable after, the 31st day of such publication, unless a person with legal authority over their disclosure notifies the Clerk of the Court by such time regarding this Court No. 11-00385 of such person's intention to file an objection to such disclosure.  If indirect notice becomes necessary, the parties shall brief the court as to the viability of that or any other proposed form of constructive notice upon application therefore.

potential harm that may result from unexpected and/or unwanted governmental (*i.e.*, court-ordered) intrusion or encroachment without prior notice.  That is fundamental.  Before proceeding further, then, the record must reflect greater formality, as aforesaid, in identifying and apprizing the non-party with authority to answer the plaintiff's request for the documents' disclosure subject to a protective order.  The plaintiff shall either subpoena directly a person with likely knowledge of the identity of the non-party, also as aforesaid, or submit a proposed form for issuance by the court.  If the identity and location of the relevant non-party are discovered, the plaintiff shall proceed accordingly.  If the non-party is identified and located outside the territorial jurisdiction of the court or consent is denied or not otherwise forthcoming, the court will consider what additional steps are appropriate upon further application therefor.

Further action on the motion for the protective order shall therefore be, and hereby is, held in abeyance pending certification for the record of the diligence that is prerequisite to grant thereof.

And therefore, upon consideration of the plaintiff's separate motion to amend the current scheduling order, it shall be, and hereby is, amended to the effect that discovery shall conclude 90 days after disclosure of the documents to the plaintiff's counsel pursuant to issuance of a protective order, or 30 days after issuance of any order ultimately denying disclosure or further discovery proceeding.

**So ordered**.

/s/  R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: April 4, 2014
          New York, New York